ACCEPTED
03-14-00774-CV
7501580
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/22/2015 3:26:12 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00774-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/22/2015 3:26:12 PM
JEFFREY D. KYLE
Clerk

ELLEN JEFFERSON, D.V.M.

*Appellant*,

v.

TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS
AND NICOLE ORIA, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR

*Appellees*.

_____

On Appeal from the 250th Judicial District Court
of Travis County, Texas

_____

**REPLY BRIEF OF APPELLANT ELLEN JEFFERSON, D.V.M.**

_____

DAVID F. BROWN
State Bar No. 03108700
dbrown@ebblaw.com
DAVID P. BLANKE
State Bar No. 02453600
dblanke@ebblaw.com
EWELL, BROWN & BLANKE, LLP
111 Congress Ave., 28th Floor
Austin, TX 78701
Ph: (512) 457-0233

RYAN CLINTON
State Bar No. 24027934
rdclinton@dgclaw.com
DAVIS, GERALD & CREMER, P.C.
111 Congress Ave., Suite 1660
Austin, Texas 78701
Ph: (512) 537-9938
Fax: (432) 687-1735

Counsel for Appellant Ellen Jefferson, D.V.M.

Oral Argument Requested

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ iii

Introduction ..................................................................................................... 1

Argument.......................................................................................................... 2

    I.   The TBVME's Appellees' Brief Concedes Multiple Errors Within the Trial Court's Judgment.......................................................................... 2

    II.  The TBVME's Proposed Alternative Grounds for Upholding the Trial Court's Dismissal of Dr. Jefferson's Uniform Declaratory Judgment Act Claims are Without Merit. .................................................. 4

        A.    The Agency's "Exclusive Jurisdiction" Argument Is Patently Wrong. ..................................................................................... 4

            1.   The Texas Legislature did not convey upon the TBVME the power to decide to act, and then act, outside its authority. ................................................................................ 4

            2.   Regardless, Dr. Jefferson's exhaustion arguments— which the TBVME does not contest—defeat "exclusive jurisdiction" as a ground for dismissing her claims................. 12

        B.    The Agency's "Ripeness" Argument Is Also Wrong .................... 14

    III.  This Court Should Hold That, As a Matter of Law, the TBVME's Prosecution of Dr. Jefferson is *Ultra Vires*............................................. 17

    IV.  The TBVME's Illegal Prosecution of Dr. Jefferson Also Merits Mandamus Relief.......................................................................................... 20

Prayer .............................................................................................................. 22

Certificate of Service ..................................................................................... 24

Certificate of Compliance .............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967), *abrogated on other grounds in
    Califano v. Sanders*, 430 U.S. 99 (1977)......................................................... 16

*Bexar Metro. Water Dist. v. City of Bulverde*,
    156 S.W.3d 79 (Tex. App.—Austin 2004, pet. denied)................................. 8

*Blue Cross Blue Shield of Tex. v. Duenez*,
    201 S.W.3d 674 (Tex. 2006) .................................................................... 7, 8

*Butnaru v. Ford Motor Co.*,
    84 S.W. 3d 198 (Tex. 2002) ...................................................................... 7, 8

*Cash Am. Int'l Inc. v. Bennett*,
    35 S.W.3d 12 (Tex. 2000) ...................................................... 5, 6, 12, 13, 14

*City of Sherman v. Pub. Util. Comm'n of Tex.*,
    643 S.W.2d 681 (Tex. 1983) ............................................... 9-10, 12, 13, 14

*Dow Chem. Co. v. Francis*,
    46 S.W.3d 237 (Tex. 2001) ........................................................................ 17

*Hamilton v. Washington*,
    No. 03-11-00594-CV, 2014 WL 7458988 (Tex. App.—Austin
    Dec. 23, 2014, no pet.) (mem. op.)............................................................. 21

*Hawkins v. Cmty. Health Choice*,
    127 S.W.3d 322 (Tex. App.—Austin 2004, no pet.).................................... 9

*Hebert Acquisitions, LLC v. Tremur Consulting Contractors, Inc.*,
    No. 03-09-00385-CV, 2011 WL 350466 (Tex. App.—Austin
    Feb. 4, 2011, no pet.) (mem. op.) .............................................................. 19

*Janek v. Harlingen Family Dentistry, P.C.*,
    451 S.W.3d 97 (Tex. App.—Austin 2014, no pet.)..................................... 20

*Mag-T, L.P. v. Travis Cent. Appraisal Dist.*,
     161 S.W.3d 617 (Tex. App.—Austin 2005, pet. denied) .................. 12, 13, 14

*Mitz v. Tex. State Bd. of Veterinary Med. Exam'rs*,
     278 S.W.3d 17 (Tex. App.—Austin 2008, pet. dism'd) ........................ 15, 16

*Rea v. State*,
     297 S.W.3d 379 (Tex. App.—Austin 2009, no pet.) ............................ 14, 15

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*,
     84 S.W.3d 212 (Tex. 2002) ....................................................................... 14

*Tara Partners, Ltd. v. City of S. Hous.*,
     282 S.W.3d 564 (Tex. App.—Houston [14th Dist.] 2009,
     pet. denied) ........................................................................................ 10

*Teladoc v. Tex. Med. Bd.*,
     453 S.W.3d 606 (Tex. App.—Austin 2014, pet. filed) ............................... 12

*Tex. Court Reporters Certification Bd. v. Esquire Deposition
     Servs., L.L.C.*, 240 S.W.3d 79 (Tex. App.—Austin 2007, no pet.) ............... 7

*Tex. Dept. of Licensing & Regulation v. Roosters MGC, LLC*,
     No. 03-09-00253-CV, 2010 WL 2354064 (Tex. App.—Austin
     June 10, 2010, no pet.) (mem. op.) ........................................................ 7, 8

*Tex. Mut. Ins. Co. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
     214 S.W.3d 613 (Tex. App.—Austin 2006, no pet.) .................... 5, 12, 13, 14

*Tex. Student Hous. Auth. v. Brazos Cnty. Appraisal Dist.*,
     No. 13-0593, 2015 WL 1870013 (Tex. Apr. 24, 2015) ....................... 2, 9, 20

*Tex. State Bd. of Exam'rs in Optometry v. Carp*,
     343 S.W.2d 242 (Tex. 1961) ................................................................ 9, 10

*Westheimer Indep. Sch. Dist. v. Brockette*,
     567 S.W.2d 780 (Tex. 1978) ...................................................................... 9

**Statutes and Rules**

TEX. OCC. CODE § 801.004 ............................................................................. 6, 10, 21

TEX. OCC. CODE § 801.004(1) ........................................................................ 1, 10, 17

TEX. OCC. CODE § 801.402(6) ................................................................................... 6

TEX. OCC. CODE § 801.402(13) ................................................................................. 6

TEX. OCC. CODE § 801.456(a) ................................................................................... 6

## INTRODUCTION

This case is and has always been about the TBVME's disregard for the Texas Legislature's 100-year-old "owner exemption" to the Veterinary Licensing Act. *See* TEX. OCC. CODE § 801.004(1). The TBVME has made clear, time and again, that it disagrees as a matter of policy with the "owner exemption"; it believes that the Legislature made the wrong call when it expressly excluded from the TBVME's authority the treatment or care of an animal by its owner, employee of the owner, or designated caretaker. *Id.* In fact, the agency's Executive Director and Defendant Nicole Oria lobbied the Texas Legislature to change the Act so as to eliminate the "owner exemption" for shelter veterinarians because she believes—as the TBVME argues throughout its brief—that the century-old statutory exception to its jurisdiction poses a danger to the public. But her lobbying effort failed and the Legislature stuck with the "owner exemption," and this case (and the judicial system generally) is an improper medium for a government agency to question the soundness of the Legislature's will.

Because the TBVME's prosecution of Dr. Jefferson (whose non-profit owns the animals the care of which the agency questions) is in clear and unambiguous contravention of the "owner exemption," the agency's Appellees' brief is forced to rely on hyperbole, strawman arguments, and misstatements of Texas jurisdictional principles. But its obfuscations can do nothing to evade the long-settled Texas rule that a governmental entity is not entitled to act beyond its authority, and when it

1

does, courts are empowered to intervene to stop it. As the Texas Supreme Court recently made clear yet again:

> If an injured party with standing brings and proves an action seeking to confine [a governmental agency] within its statutory constraints . . . courts may intervene to provide an appropriate remedy, such as an injunction to prevent [the agency] from continuing to exceed its limited statutory authority.

*Tex. Student Hous. Auth. v. Brazos County Appraisal Dist.*, No. 13-0593, 2015 WL 1870013, at *6 (Tex. Apr. 24, 2015).

Because the trial court's judgment to the contrary is erroneous, Dr. Jefferson respectfully requests that the Court reverse the trial court's erroneous judgment and render judgment that the TBVME's prosecution of Dr. Jefferson for the treatment and care of animals owned by San Antonio Pets Alive is unlawful and *ultra vires*.

## ARGUMENT

### I. THE TBVME'S APPELLEES' BRIEF CONCEDES MULTIPLE ERRORS WITHIN THE TRIAL COURT'S JUDGMENT.

The TBVME's Appellees' brief contains two critical concessions of error in the trial court's judgment. First and foremost, the TBVME concedes that the trial court erred when—in its primary challenged holding—it dismissed Dr. Jefferson's Uniform Declaratory Judgment Act claims for failure to exhaust administrative remedies. *See* 1.CR.855; TBVME Appellees' Br. at 24-25. As Dr. Jefferson explained in her opening brief, the trial court's dismissal of her declaratory-relief claims for failure to exhaust administrative remedies was erroneous because (1) the

2

Legislature did not confer upon the TBVME "exclusive jurisdiction" over conduct falling within the "owner exemption," and (2) even if it had, several exceptions to the exhaustion doctrine apply here—including the uncontested exception for *ultra vires* claims. *See* Jefferson Appellant's Br. at 21-40. In the TBVME's Appellees' brief, the agency concedes that the trial court's exhaustion holding is error, asserting that the doctrine is "immaterial" to the resolution of Dr. Jefferson's claims. *See* TBVME Appellees' Br. at 24. The agency's concession in that regard means that the part of the trial court's judgment dismissing Dr. Jefferson's declaratory-relief claims for failure to exhaust administrative remedies must be reversed unless the agency can support the dismissal on alternative grounds— which it cannot. *See infra* Part II.

Second, the TBVME concedes that the trial court erred by issuing unrequested and ambiguous declaratory relief regarding the agency's authority to enforce "other laws" in the owner-exemption context. *See* TBVME Appellees' Br. at 31-32. As Dr. Jefferson explained in her opening brief, the trial court's declaration regarding "other laws" constituted reversible error because no such declaration was requested by either party, the declaration is legally incorrect, and it is not even clear what that part of the judgment means. *See* Jefferson Appellant's Br. at 57-60.

Because the TBVME concedes that the trial court's judgment is erroneous on at least these two grounds, this appeal is no longer about *whether* the trial court

3

erred but rather *how much* it erred and what the appropriate appellate remedies for the errors are under the circumstances. The remaining issues are briefed below.

II. **THE TBVME'S PROPOSED ALTERNATIVE GROUNDS FOR UPHOLDING THE TRIAL COURT'S DISMISSAL OF DR. JEFFERSON'S UNIFORM DECLARATORY JUDGMENT ACT CLAIMS ARE WITHOUT MERIT.**

In her opening brief, Dr. Jefferson explained that the trial court erroneously dismissed Dr. Jefferson's Uniform Declaratory Judgment Act claims on the stated ground that she "failed to exhaust administrative remedies." *See* Jefferson Appellant's Br. at 21-40. The TBVME admits the trial court's error in this regard, but asserts that the dismissal of Dr. Jefferson's claims is supportable on alternative grounds. Specifically, the agency asserts that (1) the TBVME has "exclusive jurisdiction" to decide whether the Legislature has given it jurisdiction to prosecute conduct it deems unlawful, *see* TBVME Appellees' Br. at 11-19; and (2) Dr. Jefferson's claims are "unripe" because the agency has not *completed* its *ultra vires* prosecution of Dr. Jefferson, *id.* at 25-29. Both arguments are incorrect.

A. **The Agency's "Exclusive Jurisdiction" Argument Is Patently Wrong.**

1. **The Texas Legislature did not convey upon the TBVME the power to decide to act, and then act, outside its authority.**

The TBVME's first proposed alternative ground for affirming the trial court's dismissal of Dr. Jefferson's declaratory-relief claims is that—according to the agency—the Legislature impliedly conferred upon it "exclusive jurisdiction" to determine whether a particular case falls within or outside its jurisdiction and a

4

concomitant right, if it so chooses, to conduct itself outside the confines of its legal authority without interference from the judiciary. *See* TBVME Appellees' Br. at 11-19. In other words, the TBVME contends that it is endowed with a kind of implicitly conferred "superpower" that affords it—unlike essentially every other agency in the State—the ability to exceed its statutorily conferred authority whenever, however, and against whomever it in its sole discretion deems appropriate; and (2) divests Texas trial courts of their inherent constitutional and statutory jurisdiction to stop the government agency from acting outside its authority. *Id.* The lawlessness of the TBVME's position is at once transparent and breathtaking; it is also baseless and in contravention of settled Texas law.

As Dr. Jefferson explained in her opening brief, a government agency has "exclusive jurisdiction" over a dispute if the Legislature has granted the agency "the *sole* authority to make the initial determination in a dispute." *Tex. Mut. Ins. Co. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 214 S.W.3d 613, 616 (Tex. App.—Austin 2006, no pet.) (emphasis original). Whether the Legislature has conferred upon an agency such authority is a question of statutory construction, the purpose of which is "to give effect to the Legislature's intent." *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000). The test for determining whether an agency has "exclusive jurisdiction" over a particular subject matter is whether a statute "indicate[s] clearly or plainly that the Legislature intended" to divest Texas district courts of subject-matter jurisdiction over the particular subject in favor of

5

the agency's initial determination. *Id.* at 16. Because nothing in the Veterinary Licensing Act expressly or impliedly indicates the Legislature's clear intent to divest Texas courts of their inherent constitutional jurisdiction to decide whether the TBVME is acting outside its statutory authority (or more specifically, whether it is prosecuting a person covered by the "owner exemption"), the agency's exclusive-jurisdiction argument is without merit.

In its attempt to claim "exclusive jurisdiction" over Dr. Jefferson's claims that the TBVME exceeded its statutory authority by regulating conduct expressly excluded from its jurisdiction, the TBVME points to its *general* authority to discipline a veterinarian for violating the Veterinary Licensing Act or the rules promulgated thereunder. *See* TBVME Appellees' Br. at 12-13 (citing TEX. OCC. CODE § 801.456(a); 801.402(6),(13)). However, nothing in the provisions the TBVME points to—or in any other provision in its enabling Act—indicates expressly or impliedly that the agency has "exclusive authority" to either (1) decide whether it is prosecuting a person for conduct falling outside its jurisdiction, or (2) prosecute a person whose conduct falls outside its jurisdiction once it has decided to do so. Moreover, the agency has tellingly neglected to inform the Court that—per the plain terms of the statute—each of the provisions the agency points to for claimed "exclusive jurisdiction" over owner-exempted conduct expressly "does not apply to" conduct falling within the "owner exemption." TEX. OCC. CODE § 801.004. It defies reason to assert that provisions that the Legislature

6

expressly stated *do not apply* to owner-exempted conduct were intended by the Legislature *to apply* to owner-exempted conduct.

The TBVME's claimed precedential authority for its argument is also of no help. Its primary authority—*Texas Court Reporters Certification Bd. v. Esquire Deposition Servs., L.L.C.*—did *not* hold that the court reporters' board has exclusive jurisdiction over claims that it acted outside of its statutory authority, but instead held that the plaintiff's request for a declaration that its contested conduct falls outside the pertinent statute's restrictions sought "broader relief than might be available in the disciplinary proceeding" and therefore was *not* precluded by the agency's claimed "exclusive authority." 240 S.W.3d 79, 91 (Tex. App.—Austin 2007, no pet.); *see also Tex. Dept. of Licensing & Regulation v. Roosters MGC, LLC*, No. 03-09-00253-CV, 2010 WL 2354064, at *7 n.4 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.) (noting that declaratory-relief claims at issue in *Esquire* were not dismissed "because of any exclusivity concerns").

The TBVME's reliance on the Texas Supreme Court's *Butnaru* and *Duenez* cases fairs no better. Each of those cases interprets a statute that—unlike the Veterinary Licensing Act—expressly conveys "exclusive jurisdiction" upon the state agency involved, and neither case remotely reaches the conclusion advanced by the TBVME here—*i.e.*, that a statute's general appropriation of regulatory duties gives an agency "exclusive jurisdiction" to decide whether it is acting within its statutory authority (and to proceed to act outside its authority if it so chooses).

7

In *Butnaru v. Ford Motor Co.*, the Supreme Court held that a statute conveying upon a state agency "exclusive, original jurisdiction" over a subject matter gave the agency "exclusive jurisdiction" over causes of action expressly falling within that subject matter but *not* over claims related thereto but ultimately lacking a clear indication of legislative intent to be included. 84 S.W.3d 198, 203, 207-08 (Tex. 2002). And in *Blue Cross Blue Shield of Tex. v. Duenez*, the Supreme Court held that even if the Legislature expressly conveys upon a government agency "exclusive authority to determine *all* questions relating to" a particular subject matter, the claims *still* will not be barred if an exception to the exhaustion-of-administrative-remedies doctrine applies. 201 S.W.3d 674, 676-77 (Tex. 2006) (emphasis added). Here, there is no express conveyance of "exclusive jurisdiction" in the Veterinary Licensing Act; there are no words in the Act indicating that the TBVME has authority to resolve "all questions" relating to the treatment or care of animals; there is nothing explicit or implicit in the Act indicating that the agency has the right to determine the limits of its own jurisdiction; and there is nothing explicit or implicit in the Act that defeats Texas district courts' inherent jurisdiction to stop the TBVME from acting outside its statutory authority. *See Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied) (rejecting exclusive-jurisdiction argument because no statutory language gave agency exclusive authority to interpret its enabling statute); *Roosters MGC*, 2010 WL 2354064, at *6 (rejecting exclusive-jurisdiction

8

argument because declaratory-judgment claim sought broader relief than mere reversal of the agency's disciplinary action). Accordingly, when Dr. Jefferson sought "to confine [the TBVME] within its statutory constraints," the trial court undoubtedly had jurisdiction "to intervene to provide the appropriate remedy, such as an injunction to prevent [the agency] from continuing to exceed its limited statutory authority." *See Tex. Student Hous. Auth.*, 2015 WL 1870013, at *6; *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978) (courts may intervene "when an agency is exercising authority beyond its statutorily conferred powers").[1]

Moreover, as Dr. Jefferson explained in her opening brief, the Legislature went even further in the Veterinary Licensing Act to expressly and specifically *exclude* the TBVME from regulating conduct covered by the "owner exemption." *See* Jefferson Appellant's Br. at 27-30. As the Texas courts have uniformly held, when a statute expressly excludes a specific subject area from a regulatory agency's authority, it necessarily does not confer upon the agency the "exclusive jurisdiction" to regulate within that subject area. *Id.* (citing *City of Sherman v.*

---

[1] The agency's references to *Hawkins v. Cmty. Health Choice*, 127 S.W.3d 322 (Tex. App.— Austin 2004, no pet.) and *Tex. State Bd. of Exam'rs in Optometry v. Carp*, 343 S.W.2d 242, 246 (Tex. 1961) are also off point. *Hawkins* expressly holds that a state agency *can* be forced to comply with the law even when it believes it need not do so under the facts of a particular case. 127 S.W.2d at 324-26 (criticizing the state agency for attempting to be the "sole fact-finder" and stating that permitting its argument would mean that claims against the agency "would rise or fall based on that agency's potentially self-interested interpretation" of the law and facts). And *Carp* merely recognizes that courts should not interfere with an agency's "*lawful* exercise of duties and functions *committed to them by law*." 343 S.W.2d at 246 (emphasis added). It affords the TBVME no protection for acting unlawfully or outside its statutorily delegated authority.

*Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 683-85 (Tex. 1983); *Tara Partners, Ltd. v. City of S. Hous.*, 282 S.W.3d 564, 571 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)). Even though both referenced cases expressly so hold, the TBVME asserts each is "distinguishable." *See* TBVME Appellees' Br. at 15. The agency claims that *Tara Partners* is "distinguishable" because in that case, the agency was "*expressly*" barred from regulating the contested conduct, and that *City of Sherman* is "distinguishable" because in that case, the regulatory agency's exemption was "*clear.*" *Id.* at 15-16 (emphasis original). What the TBVME forgets is that the "owner exemption" to *its* regulatory authority is also "express" and "clear." *See* TEX. OCC. CODE § 801.004(1) (the Veterinary Licensing Act "does not apply to . . . the treatment or care of an animal in any manner by the owner of the animal, an employee of the owner, or a designated caretaker of the animal . . . .").

Finally, the Board hyperbolically asserts—as it does throughout its brief— that if the Court were to hold that the TBVME does not have "exclusive jurisdiction" to decide whether a person's conduct falls within the agency's statutory authority (and thus allow a litigant to question the agency's *ultra vires* acts), "any vet could simply claim to be exempt without any investigation of the facts underlying such a claim" and "[t]hat would lead to the unregulated practice of veterinary medicine, a result which the Legislature certainly did not intend." *See* TBVME Br. at 17 (if a person is allowed to question the agency's *ultra vires* act,

10

"any veterinarian could evade the Act simply by *claiming* to be exempt.") (emphasis original), 18 (allowing *ultra vires* claim would permit "a vet [sic] [to] take him or herself out of the disciplinary authority of the Board by just saying 'because I said so.'"). To put it simply, this argument is nonsensical. Permitting access to Texas courts for claims that a governmental agency has acted *ultra vires* would not lead to the "unregulated practice of veterinary medicine," or to the evasion of the Veterinary Licensing Act "simply by *claiming* to be exempt" or "by just saying 'because I said so.'" *Id.* at 17-18 (emphasis original). Rather, recognizing Texas courts' inherent constitutional and statutory jurisdiction over *ultra vires* claims merely allows a litigant the *opportunity to prove* that a government agency has acted unlawfully. And only upon such proof would a Texas court bar the agency from *exceeding* its statutory authority (not from exercising its lawful authority). And if, in fact, a person who is by law exempt from a government agency's regulatory authority proves her case, a court order halting the agency's illegal conduct would not undermine the Legislature's intent; to the contrary, it would give effect to the Legislature's intent. This Court recently said it well:

> [W]here, as here, an agency's legal or policy pronouncements seek to control the conduct of a free people through the assertion or threatened assertion of State power, agency "impotence" is hardly the relevant concern under our Constitution and laws. Rather, it is the risk that agencies—whose legitimate authority and very existence must derive from law and not merely perceived "expediency"—will stray from their legal limitations (perhaps with the best of individual

11

intentions, but exceeding them nevertheless) through what federal courts have aptly termed a "tyranny of small decisions" that substantively assert Executive or Legislative power over the citizenry through forms calculated to avoid the meaningful checks and balances the Framers intended the Judiciary to provide.

*Teladoc, Inc. v. Tex. Med. Bd.*, 453 S.W.3d 606, 622 (Tex. App.—Austin 2014, pet. filed) (citations omitted). The TBVME's claim of impotence—should it actually have to defend the legality of its actions in the courts of Texas—is equally misdirected.

**2. Regardless, Dr. Jefferson's exhaustion arguments—which the TBVME does not contest—defeat "exclusive jurisdiction" as a ground for dismissing her claims.**

A state agency's "exclusive jurisdiction" over a dispute is not an automatic bar to a lawsuit but rather sets up a second inquiry: whether the litigant has exhausted her administrative remedies under the particular circumstances of the case. *Cash Am.*, 35 S.W.3d at 16 ("When the Legislature vests exclusive jurisdiction in an agency, exhaustion of remedies is required."); *City of Sherman*, 643 S.W.2d at 683; *Tex. Mut. Ins. Co.*, 214 S.W.3d at 616; *Mag-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 625 (Tex. App.—Austin 2005, pet. denied) (if agency has exclusive authority, suit subject to dismissal unless claim "falls into one of the exceptions to the exhaustion of administrative remedies doctrine"). In other words—contrary to the TBVME's assertion (made without authority) that exhaustion-of-administrative-remedies is "simply immaterial" once a court has determined an agency has "exclusive subject matter jurisdiction," *see* TBVME

12

Appellees' Br. at 24, a Texas district court will be divested of jurisdiction over a suit due to "exclusive jurisdiction" *only if both* the agency has "exclusive jurisdiction" *and* (2) none of the exceptions to the exhaustion-of-administrative-remedies doctrine applies. *See Cash Am.*, 35 S.W.3d at 16; *City of Sherman*, 643 S.W.2d at 683; *Tex. Mut. Ins. Co.*, 214 S.W.3d at 616; *Mag-T, L.P.*, 161 S.W.3d at 625.

In her opening brief, Dr. Jefferson briefed four exceptions to the exhaustion-of-administrative-remedies doctrine that retain the trial court's jurisdiction over this case regardless of whether the TBVME has "exclusive jurisdiction" over the "owner exemption." First, the doctrine does not divest a district court of jurisdiction to adjudicate claims—like those here—alleging that a governmental agency is acting outside its authority. *See* Jefferson Appellant's Br. at 31-33. Second, the doctrine does not divest a district court of jurisdiction where—as here—forcing the plaintiff to first exhaust administrative remedies would subject the plaintiff to irreparable harm. *Id.* at 33-36. Third, the doctrine does not divest a district court of jurisdiction where—as here—the issue presented is legal in nature. *Id.* at 36-37. And fourth, the doctrine does not divest a district court of jurisdiction where—as here—the litigant's participation in further administrative proceedings would be an "exercise in futility." *Id.* at 37-40. In its Appellees' brief, the TBVME did not contest Dr. Jefferson's first, third, and fourth arguments. *See* TBVME Appellees' Br. at 23-25. As a result, it is uncontested that Dr. Jefferson is

not required to exhaust her administrative remedies, *id.*, which means that the trial court has jurisdiction over this suit regardless of whether the TBVME has "exclusive jurisdiction." *See Cash Am.*, 35 S.W.3d at 16; *City of Sherman*, 643 S.W.2d at 683; *Tex. Mut. Ins. Co.*, 214 S.W.3d at 616; *Mag-T, L.P.*, 161 S.W.3d at 625. The TBVME's reliance on "exclusive jurisdiction" as an alternative ground to uphold the trial court's dismissal of Dr. Jefferson's Uniform Declaratory Judgment Act claims is thus without merit.

## B. The Agency's "Ripeness" Argument Is Also Wrong.

Dr. Jefferson anticipated that the TBVME would assert "ripeness" as an alternative ground for the trial court's dismissal of her declaratory-relief claims and therefore already addressed the argument in her opening brief. *See* Jefferson Appellant's Br. at 41-43. As Dr. Jefferson explained, a ripeness objection does not divest a district court of jurisdiction to consider a claim—like Dr. Jefferson's— alleging that a state actor is acting "in excess of its powers and jurisdiction." *Rea v. State*, 297 S.W.3d 379, 384 (Tex. App.—Austin 2009, no pet.) (citing *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002)). That rule specifically defeats an agency's jurisdictional plea whenever the complainant alleges—like Dr. Jefferson here—that "the Board or SOAH lacks authority to make an initial determination regarding the revocation or suspension of a . . . license" under the particular facts of a case. *Id.* at 384-85. The TBVME's Appellees' brief offers no response on this point.

14

Instead, the agency's brief alleges that Dr. Jefferson's suit is unripe because, although the TBVME has already concluded that Dr. Jefferson has violated the Veterinary Licensing Act and rules promulgated thereunder, 1.CR.117, it has not yet *concluded* its prosecution of Dr. Jefferson. *See* TBVME Appellees' Br. at 26-27. But this Court has already rejected that argument when the TBVME advanced it in another case:

> The Board argues that this case is not ripe because the statute in question has not yet been enforced against the practitioners in a final agency action. However, in order to establish ripeness . . ., the practitioners are not required to demonstrate that the statute has been [finally] enforced against them, but only "that an enforcement action is 'imminent or sufficiently likely.'" As the Board states in its brief on appeal, [it has already begun enforcement action]. . . . [T]he informal conferences and [allegations] that the practitioners were in violation of the Act and that their cases would be referred to SOAH, are sufficient to establish that an enforcement action is imminent or sufficiently likely.

*Mitz v. Tex. State Bd. of Veterinary Med. Exam'rs*, 278 S.W.3d 17, 25 (Tex. App.—Austin 2008, pet. dism'd).

Moreover, as Dr. Jefferson explained in her opening brief, an additional reason ripeness is not a bar to the trial court's jurisdiction is that she "would suffer hardship if judicial review is withheld until administrative proceedings have concluded." *See* Jefferson Appellant's Br. at 41 (quoting *Mitz*, 278 S.W.3d at 26). As this Court has explained, hardship is established when participating in an administrative proceeding "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to

15

noncompliance." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967), *abrogated on other grounds in Califano v. Sanders*, 430 U.S. 99 (1977)). Dr. Jefferson and San Antonio Pets Alive would suffer severe hardship—including either having to make significant changes to their business practice or exposing themselves to "serious penalties attached to noncompliance"—if Dr. Jefferson were forced to continue to fight the TBVME's *ultra vires* conduct within the administrative process. *See* Jefferson Appellant's Br. at 42-43; *see also id.* at 33-36.

Here too, the TBVME's response makes little sense. The agency claims that "Dr. Jefferson has been free to operate SAPA throughout the course of this case and underlying administrative proceeding." *See* TBVME Appellees' Br. at 28. But the fact that Dr. Jefferson is physically "free" is inconsequential. The question is whether Dr. Jefferson is forced into a lose-lose choice of either (1) significantly changing her business practices, or (2) exposing herself to the possibility of additional charges by not changing her business practices. *See Mitz*, 278 S.W.3d at 26. The evidence at trial conclusively demonstrated that that is exactly what has happened here: Dr. Jefferson must either comply with the agency's incorrect view of the law and significantly change her business practices pending administrative review *or* face additional potential serious penalties for not significantly changing her business practices to comport with the agency's incorrect view of the law. *See*

16

Jefferson Appellant's Br. at 33-36, 42-43. For each of these reasons, Dr. Jefferson's claims are not "unripe."[2]

### III. THIS COURT SHOULD HOLD THAT, AS A MATTER OF LAW, THE TBVME'S PROSECUTION OF DR. JEFFERSON IS *ULTRA VIRES*.

Given that the trial court had jurisdiction to determine Dr. Jefferson's declaratory-relief claims, the trial court should have reached the merits of those claims. Based on the conclusive and uncontroverted evidence and testimony presented at the combined plea and trial on the merits, this Court should hold that pursuant to the "owner exemption" of the Veterinary Licensing Act, the TBVME has no authority over Dr. Jefferson's treatment and care of the animals owned by her nonprofit San Antonio Pets Alive and thus the agency's attempt to prosecute Dr. Jefferson for her care of SAPA's animals is *ultra vires* and unlawful. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

The "owner exemption" to the Veterinary Licensing Act states that the Act "does not apply to . . . the treatment or care of an animal in any manner by the owner of the animal, an employee of the owner, or a designated caretaker of the animal, unless the ownership, employment, or designation is established with the intent to violate [the Act]." TEX. OCC. CODE § 801.004(1). The Board conceded at trial (and in its "Allegations," 1.CR.117) that San Antonio Pets Alive owned the

---

[2] The agency's *ultra vires* conduct has also already injured Dr. Jefferson and San Antonio Pets Alive. As Dr. Jefferson explained at trial, following the agency's unlawful proceedings against her, one of SAPA's veterinarians resigned from the organization, and SAPA has been unable to attract another veterinarian to work on behalf of the shelter. 2.RR.163.

animals at issue, 2.RR.41-42, leaving two merits questions: (1) whether Dr. Jefferson's provision of care to SAPA's animals constituted "the treatment or care of an animal in any manner by the owner of the animal, an employee of the owner, or a designated caretaker"; and (2) whether SAPA's ownership of the animals or Dr. Jefferson's role at SAPA was "established with the intent to violate" the Act. Dr. Jefferson explained in her opening brief that—as a matter of law—Dr. Jefferson's care of SAPA's animals was by the owner, employee of the owner, or designated caretaker of the animals. *See* Jefferson Appellant's Br. at 45-49. Dr. Jefferson also explained in her opening brief that the evidence was uncontroverted and conclusive—and thus demonstrated as a matter of law—that Dr. Jefferson and SAPA did not intend to violate the Veterinary Licensing Act when they established ownership of the animals and Dr. Jefferson's role with the organization. *See id.* at 50-57. Dr. Jefferson and SAPA's *sole* intent was to save shelter animals' lives. *Id.*

In its Appellees' Brief, the TBVME elected not to contest that SAPA owned the animals or that Dr. Jefferson's treatment of SAPA's animals was by the owner, employee of the owner, or designated caretaker of the animals. The TBVME's sole contest of the *merits* of Dr. Jefferson's declaratory-relief claim in the entirety of its Appellees' Brief is found in two sentences of a single footnote in its brief. According to the TBVME, "the evidence at trial was not 'uncontroverted' on the issue of whether Dr. Jefferson is exempt. The Board presented documentary evidence at trial which it believed demonstrated that Dr. Jefferson did in fact

18

intend to evade the Act." *See* TBVME Appellees' Br. at 19 n.3 (citing 1.RR.114, 170, 198). That's it. No analysis, no briefing, no authority; just a reference to three pages. That is not an adequately presented appellate argument and it is therefore waived. *See Hebert Acquisitions, LLC v. Tremur Consulting Contractors, Inc.*, No. 03-09-00385-CV, 2011 WL 350466, at *12 n.13 (Tex. App.—Austin Feb. 4, 2011, no pet.) (mem. op.). In any event, the three pages referenced by the TBVME do not create a fact issue that would prevent this Court from recognizing as a matter of law that Dr. Jefferson did not intend to violate the Veterinary Licensing Act. In fact, the subject of Dr. Jefferson's intent is not even *mentioned* on the referenced pages. 2.RR.114, 170, 198.

Finally, the agency asserts that regardless of whether Dr. Jefferson's conduct fell under the "owner exemption," the Court should hold that its prosecution of Dr. Jefferson for conduct over which the agency has no authority was not *ultra vires* because the acts of the TBVME and its executive director Oria are "discretionary" in nature and thus not subject to an *ultra vires* claim. *See* TBMVE Appellees' Br. at 19-23. Here again, the agency's position defies logic. Dr. Jefferson has not requested a declaration that the agency has no authority to investigate complaints or to discipline veterinarians *in general*. Instead, Dr. Jefferson has requested a declaration that her care and treatment of SAPA's animals falls within the "owner exemption" of the Veterinary Licensing Act and, therefore, that the TBVME's and Oria's *proceedings against her* regarding her care and treatment of SAPA's

19

animals exceed the agency's statutory authority and are therefore unlawful and *ultra vires*. *See* Jefferson Appellant's Br. at 44-52. Those are different questions than the strawman argument that the agency presents, and it is undisputable that a government agency does not have discretion to act beyond its statutory authority. *See Tex. Student Hous. Auth.*, 2015 WL 1870013, at *6. Because Dr. Jefferson proved as a matter of law at the trial court's joint trial and plea hearing that her treatment and care of SAPA's animals falls within the "owner exemption" to the TBVME's authority, this Court should and is empowered to so hold. *See id.* Accordingly, Dr. Jefferson respectfully requests that this Court declare the agency's proceedings against her *ultra vires* and enjoin the agency from further prosecuting Dr. Jefferson for conduct falling outside its expressly limited statutory authority.

## IV. THE TBVME'S ILLEGAL PROSECUTION OF DR. JEFFERSON ALSO MERITS MANDAMUS RELIEF.

Dr. Jefferson's final argument on appeal is that the trial court erred by denying her request for mandamus relief to stop the TBVME's illegal and *ultra vires* proceedings against her. *See* Jefferson Appellant's Br. at 53-57. As Dr. Jefferson's opening brief explains, mandamus relief is available both to compel a government official "to perform a ministerial act," *Janek v. Harlingen Family Dentistry, P.C.*, 451 S.W.3d 97, 101 (Tex. App.—Austin 2014, no pet.), *and* to protect a person "from illegal or unauthorized" acts of government officials sued

"in their official capacity," *Hamilton v. Washington*, No. 03-11-00594-CV, 2014 WL 7458988, at *5 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.). Dr. Jefferson demonstrated both. *See* Jefferson Appellant's Br. at 56-57.

In its Appellees' Brief, the TBVME responds that the Veterinary Licensing Act does not "'clearly spell out' any requirement that the Board ignore a complaint when a vet simply *claims* to be exempt." *See* TBVME Appellees' Br. at 29 (emphasis original). Again, the agency misses the point. Dr. Jefferson has never argued that the TBVME must "ignore a complaint when a vet simply claims to be exempt." *Id.* To the contrary, Dr. Jefferson's argument is that the TBVME has no authority to prosecute her (or anyone else, for that matter) for the care and treatment of an animal falling under the "owner exemption" to the agency's authority. *See* Jefferson Appellant's Br. at 44-52, 53-57. That exemption *is* "clearly spelled out." *See* TEX. OCC. CODE § 801.004. Moreover, as this Court has made clear, mandamus is proper to prevent government officials from committing "illegal or unauthorized acts." *Hamilton*, 2014 WL 7458988, at *5. Because Oria has no discretion to act outside the agency's statutory authority, she has no choice but to drop the claims against Dr. Jefferson.

Finally, the TBVME asserts that the benefits to mandamus are outweighed by the detriments in this case because stopping the agency from acting outside its authority "would . . . negatively impact[] its ability to protect the public," and if the Court were to constrain it to its statutory authority, "those entire statutory schemes

would be turned on their head." *See* TBMVE Appellees' Br. at 31. This too is wrong. The agency has no authority, permission, policy directive, responsibility, or ability to act outside its statutory authority, and constraining it to its statutory authority would give effect to—not contravene—legislative intent. And as this Court has already said, an agency's claim of impotence should it be required to obey the law is of no import. The question is a simple one: is the TBVME's prosecution of Dr. Jefferson for her care and treatment of SAPA's animals *ultra vires* pursuant to the "owner exemption"? As a matter of law, the answer is "yes." This Court should therefore reverse the trial court's denial of mandamus relief and issue such relief barring the agency from further violating Texas law.

## PRAYER

For these reasons, Dr. Jefferson respectfully requests that this Court reverse that part of the trial court's judgment (1) dismissing Dr. Jefferson's UDJA claims for failure to exhaust administrative remedies; (2) denying (or dismissing) Dr. Jefferson's requested mandamus relief; and (3) issuing ambiguous, unrequested, and improper declaratory relief regarding "other laws." Dr. Jefferson requests that the Court render the judgment that the trial court should have rendered, including holding that the TBVME and Oria's disciplinary proceedings against Dr. Jefferson are illegal and *ultra vires*, and issuing injunctive and mandamus relief to stop Oria and the agency from unlawfully disciplining Dr. Jefferson for her care and treatment of animals owned by San Antonio Pets Alive. Alternatively, Dr.

22

Jefferson requests that the Court reverse the trial court's judgment and remand the case to the trial court for consideration of the merits of Dr. Jefferson's UDJA and mandamus claims. Finally, Dr. Jefferson requests that the Court strike or modify the trial court's ambiguous declaration regarding "other laws," and that the Court issue any such other relief to which she may be entitled in equity or law.

Respectfully submitted,

*/s/ Ryan Clinton*
Ryan Clinton
State Bar No. 24027934
rdclinton@dgclaw.com
DAVIS, GERALD & CREMER, P.C.
111 Congress Ave., Suite 2800
Austin, Texas 78701
Ph: (512) 537-9938
Fax: (432) 687-1735

David F. Brown
State Bar No.  03108700
dbrown@ebblaw.com
David P. Blanke
State Bar No. 02453600
dblanke@ebblaw.com
EWELL, BROWN & BLANKE, LLP
111 Congress Ave., 28th Floor
Austin, TX 78701
Ph: (512) 457-0233

23

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent this

22nd day of October, 2015 as follows:

**VIA EFSP & EMAIL**
Mr. Andrew Lutostanski
andrew.lutostanski@texasattorneygeneral.gov
Mr. Ted A. Ross
ted.ross@texasattorneygeneral.gov
Office of the Attorney General of Texas
Administrative Law Division
P. O. Box 12548
Austin, TX 78711

*/s/ Ryan Clinton*
Ryan Clinton

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document (Microsoft Word), I certify that the number of words in this brief (excluding the identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certification, certificate of compliance, and appendix) is 5,576 and that the text of the document is in 14-pt. font. The text of all footnotes is 12-pt.font.

*/s/ Ryan Clinton*

Ryan Clinton